GEORGE O. ROCKWOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM M. ROCKWOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN N. BROWNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

S. P. BROWNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72711–72714. Promulgated December 19, 1934.

*John E. Keough, C. P. A.*, for the petitioners.
*H. D. Thomas, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined the following deficiencies in the petitioners' income tax for the year 1930:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 72711 | George O. Rockwood | $3,112.60 |
| 72712 | William M. Rockwood | 2,052.32 |
| 72713 | John N. Browning | 371.06 |
| 72714 | S. P. Browning | 1,774.90 |

The only issue in the cases is whether cash received by each of the petitioners in 1930 from General Fibre Products, Inc., in cancellation and redemption of preferred stock of the corporation, is to be

treated as a taxable dividend under section 115 (g) of the Revenue Act of 1928, in accordance with the determination of the Commissioner, or whether it is to be treated as in part or full payment in exchange for the stock as provided in section 115 (c). The facts have been presented by a stipulation.

General Fibre Products, Inc., is an Indiana corporation, organized on August 17, 1927. It issued, on or about the date of incorporation, 50,000 shares of no par common and 7,500 shares of $100 par value cumulative preferred stock in exchange for the assets of two preexisting corporations. The stipulation contains the following statement:

This stipulation, including attached exhibits, embodies all of the contracts and agreements between the parties at that time [August 17, 1927] with respect to the issuance and retirement of capital stock of General Fibre Products, Inc.

The four petitioners in these cases, at all times material hereto, have held all of the common stock and all of the preferred stock of General Fibre Products, Inc. The percentage of the total outstanding preferred stock held by each petitioner has at all times been equal to the percentage of the total outstanding common stock held by that petitioner.

The articles of incorporation provided that the corporation, at the option of the board of directors, might redeem at any time the whole or any part of the preferred stock then outstanding at $110 per share, plus cumulative dividends, and further provided that in case of the redemption of a part only of the preferred stock outstanding, such redemption should be pro rata according to the number of shares held by the respective holders thereof.

The General Fibre Products, Inc., retired 1,000 shares of preferred stock pursuant to a resolution of the board of directors, adopted July 19, 1928, and retired 500 shares of preferred stock in 1930, pursuant to a resolution of the board of directors adopted July 28, 1930. The latter resolution, which was identical with the former except for the dates and figures, was as follows:

WHEREAS, future operations of this company appear to require for working capital only a portion of the funds now available;

BE IT RESOLVED, that Fifty thousand ($50,000) dollars par value of the outstanding preferred stock of this company be called for redemption and cancellation at the price of One Hundred ten ($110.00) dollars per share, as provided by the corporation's By-Laws. Said stock to be called pro rata from each of the stockholders of said total amount of outstanding preferred stock as of February 15, 1930;

BE IT ORDERED, that the treasurer set aside at once sufficient funds for the retirement of said stock;

BE IT FURTHER ORDERED, that a dividend is hereby declared on the said Fifty Thousand ($50,000) dollars of preferred stock to be retired, at the rate of

eight (8%) percent per annum from January 1, 1930 to February 15, 1930, inclusive, and the right to receive dividends on said retired stock shall cease after February 15, 1930.

General Fibre Products, Inc., had earnings on January 28, 1930, accumulated after February 28, 1913, in excess of the amount of cash distributed to the stockholders in retirement of the preferred stock. It had paid dividends on its preferred stock in 1928 and 1929 and it paid a dividend of $75,000 on its common stock in 1929.

The Commissioner, in determining the deficiencies, included as dividends the total amount received by each petitioner on the retirement of his preferred stock and eliminated from taxable income any profit from the retirement of the stock reported on the returns.

The Commissioner has held that section 115 (g)[1] of the Revenue Act of 1928 is applicable. This stock was not issued as a stock dividend, and at the time it was issued there was no agreement of any kind pertinent hereto relating to its retirement except that any future partial retirement should be pro rata. The question is whether or not the redemption of this stock was " at such time and in such manner as to make the distribution and cancellation or redemption * * * essentially equivalent to the distribution of a taxable dividend." The Commissioner relies upon the implied correctness of his determination and argues that the petitioner has not shown affirmatively that the distribution and retirement were for some purpose other than a disguise for the distribution of an ordinary dividend. He also points to the fact that the retirement and distribution were on a pro rata basis which did not disturb the relative interests of the stockholders in the corporation as some affirmative evidence in his favor. The decision in this case need not be based upon a failure of proof. The documentary proof seems to be complete. Although there was no testimony from the individuals who acted for the corporation, still a reason for the retirement of the stock was given in the resolution itself, and the very fact that the actions of the corporation were regular, natural, and normal tends to negative the Commissioner's contention. It is true that the shareholders received a cash distribution from the corporation as they would have done if a dividend had been declared and paid, and the retirement might under such circumstances be availed of to disguise the distribution of an ordinary dividend. " But ", as was said in *Pearl B. Brown, Executrix*, 26 B. T. A. 901, 909, " it would be

---

[1] Sec. 115. (g) *Redemption of stock.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. * * *

930

stretching the legislative assimilation beyond its clear limits to regard this as decisive." It is not unusual for preferred stock to be retired pro rata. The normal treatment of retirement of preferred stock for tax purposes is set forth in section 115 (c) and it is only where a cash redemption of shares is essentially equivalent to the distribution of a taxable dividend *because of some circumstance of time or manner* that a different method of taxation becomes applicable. We see nothing in the time and manner in which the distribution and retirement were made in this case to justify the application of section 115 (g). The petitioner, through the stipulation, has made a *prima facie* showing that the cancellation or redemption was not made at such time and in such manner as to make the distribution and cancellation essentially equivalent to the distribution of a taxable dividend and, on the contrary, that the distribution, cancellation, and redemption was an ordinary retirement of some preferred stock.

*Decision will be entered under Rule 50.*